THIRD NATIONAL BANK v. OWEN *et al.*, *Appellants*.

1. **Sureties**: BANK TELLER'S BOND : PLEADING. In an action by a bank on a bond conditioned that the principal should faithfully account to the bank for all moneys that should come into his hands as receiving teller, the sureties by their answer set up as a defense that the principal was permitted to perform the duties of

The Third Nat. Bank v. Owen.

other officers of the bank, and to discharge the duties of his office in an irregular way, and to engage in business outside of the bank, contrary to its by-laws. *Held* that these allegations failing to show that anything was done or left undone by the bank or its officers which impaired the power of the teller to honestly account to the bank for money and effects received by him as receiving teller were properly stricken out.

2. ———: ———: ———. The answer averred that when the sureties executed the bond the principal was in the bank's service as receiving teller, and that the bank held him out to the sureties as a faithful officer when, in fact, he was then in default to the bank, which fact was known to the bank, but was fraudulently concealed from the sureties in order to induce them to execute the bond; *held* that these allegations constituted a good defense, and were improperly stricken out on plaintiff's motion, and this, although the evidential facts set up in the answer were insufficient to show that the bank knew of such embezzlement.

3. ———: ———: ———. It was not necessary that such plea set out the means by which plaintiff acquired knowledge of the receiving teller's dishonesty.

4. **Practice:** REFERENCE. Where the examination of a long and difficult account is involved in a case, the court may direct a compulsory reference under Revised Statutes, 1879, section 3606.

5. **Evidence:** PRESUMPTION AS TO ACTION OF TRIAL COURT. A trial court will be presumed to have correctly overruled exceptions to a referee's report touching the admission in evidence of a deposition, in the absence of any reason assigned or apparent of record for its exclusion.

6. **Evidence:** WITNESS REFRESHING MEMORY BY BOOKS. It is not error to allow a witness to refresh his memory by an examination of entries in books and an inspection of the stubs of checks made in the usual course of the business in which the witness was engaged and with the conduct of which he was familiar and which had been examined by him, after they were made and before he testified, and found to be correct.

7. **Practice in Supreme Court:** REVERSING JUDGMENT SPECIALLY. The judgment in this case which was on a referee's report reversed because of error in striking out defendant's plea of fraud, and cause remanded with directions to try that issue alone, and that if plaintiff prevail thereon judgment be entered on the referee's report; otherwise the judgment to be for defendants.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

The Third Nat. Bank v. Owen.

REVERSED AND REMANDED.

*Hitchcock, Madill & Finkelnburg* and *Valle Reyburn* for appellants.

(1) The court erred in striking out from the defendants' answer to plaintiff's amended petition those portions to which the plaintiff's motion to strike out was addressed. *Skillet v. Fletcher,* 2 Com. Pleas, Law Rep. 469; *Bank v. Hunt,* 72 Mo. 600; *Graves v. Bank,* 10 Bush. 23. (2) The court erred in the compulsory reference of the case, against the objections of defendants, thus depriving defendants of their right to have the issues tried by the jury or before the court. 1 R. S., sec. 3606, p. 616; *Camp v. Ingersoll,* 86 N. Y. 433; *Silsmer v. Redfield,* 19 Wend. 21; *Dane v. L. & L. Co.,* 21 Hun. (28 N. Y. Sup. Ct. 259); *Freeman v. Ins. Co.,* 13 Ab. Pr. 124. (3) The referee erred in the admission of testimony offered by plaintiff. *First.* The deposition of Owen, taken at Chester, in cause number 61,103, was not admissible in this case against these defendants. *Second.* The witnesses Owen, Cooke and Block should not have been permitted to refresh their memories by an examination of the entries in the books, and by inspection of the stubs of checks of Owen & Co. 1 Wharton Ev., sec. 522; 2 Phillips, Ev., p. 916; 1 Greenl. Ev., sec. 437; *Watts v. Sawyer,* 55 N. H. 40; *Ins. Co. v. Weide,* 14 Wall. 380; *Feeter v. Heath,* 11 Wend. 485.

*G. A. Madill* and *Valle Reyburn* for appellants.

(1) The court erred in striking out parts of defendants' answer. Fraud, legal or actual, vitiates all contracts, and the contracts of guaranty and suretyship, of which good faith is the essence, are especially within the general principle. *Graves v. Bank,* 10 Bush. (Ky.) 23; Baylies Sureties, p. 293; Morse on Banks, sec. 21*b;* Story's Eq. Jurisp., sec. 324. The latter portion

of the defense now under consideration alleges the knowledge by plaintiff of the existence of the defalcation prior to the signing of the bond and the suppression of such fact from the sureties, herein defendants. That the latter averments herein pleaded, which the trial court has ruled constituted immaterial allegations, embrace a full and sufficient defense, is sustained by authority and precedent thus : *State to use v. Atherton*, 40 Mo. 217 ; *Harrison v. Ins. Co.*, 8 Mo. App. 37 ; *Fire, etc., Co. v. Thompson*, 68 Cal. 208; *Dinsmore v. Tidball*, 34 Ohio St. 411 ; *Bank v. Stevens*, 39 Maine, 532 ; *Sooy v. State*, 39 N. J. Law, 142 ; *Wayne v. Bank*, 52 Pa. St. 343 ; 1 Morse, Banks & Banking [ 3 Ed.] sec. 21 ; Brandt, Suretyship, sec. 367 ; Baylies, Sureties, pp. 294, 295 ; DeColyar, Guaranties, pp. 361, 372. ( 2 ) The trial court erred in depriving defendants of a jury trial of the issues in the cause by a compulsory reference. *Father Mathew, etc., v. Fitzwilliams*, 84 Mo. 402 ; *Ittner v. Exposition*, 97 Mo. 567 ; *Camp v. Ingersoll*, 86 N. Y. 433 ; *Kaus v. Delano*, 11 Abb. ( N. S.) 29 ; *Keep v. Keep*, 58 How. Pr. 139 ; *Claflin v. Drake*, 38 Hun. 144; *Read v. Lozin*, 31 Hun. 286 ; Poor on Referees, p. 19. ( 3 ) There was error in permitting Owen and his employes, Cooke and Block, to refresh their memories by examination and inspection of the entries in the books, and the inspection of the check stubs of Owen & Co., and then to testify therefrom. It is essential they should have seen the paper near the time of the transaction, and should have then known that it was correct. 1 Greenl. Ev., sec. 437 ; 1 Wharton, Ev., sec. 522 ; *Watts v. Sawyer*, 55 N. H. 40 ; *Ins. Co. v. Weide*, 14 Wall. 380 ; *Feeter v. Heath*, 11 Wend. 485.

*John H. Overall* for respondent.

( 1 ) The court properly sustained the motion to strike out parts of defendants' answer. *First.* Neglect to enforce by-laws of the bank did not affect the

liability of the surety on the bond. *Mintern v. United States*, 106 U. S. 437; *Morris Canal v. Van Vorst*, 21 N. J. Law Rep. 116. The obligee on the bond is not obliged for the benefit of the sureties to watch the principal. *Bank v. Chetwood*, 3 Halst. 1; *Taylor v. Bank*, 2 J. J. Marsh, 565; 9 North Am. Law Reg. ( N. S.) 365. *Second.* Neither do the averments in connection with the by-laws that Owen performed the duties of various other offices present any defense; because the fact itself, whatever may have been the duties performed, is not sufficient to excuse the sureties. See *Shawbridge v. Railroad*, 14 Maryland, 360; *Railroad v. Goodwin*, 3 Wels. Hurl. & Gra. 320; *Ins. Co. v. Potter*, 4 Mo. App. 59; *Bank v. Auth*, 87 Pa. St. 419; *Bank v. McGinness*, 9 Mo. App. 578. *Third.* Negligence to examine, however gross, would not discharge sureties in the absence of actual knowledge of the fraud. *Tapley v. Martin*, 116 Mass. 275; *Bank v. Stevens*, 39 Maine, 532; *Bank v. Root*, 2 Metcalf, 522; *Wayne v. Bank*, 52 Penn. St. 343; *Bank v. Brownell*, 9 R. I. 168; 10 Exchequer, 523; *Bank v. Elwood*, 21 N. Y. 88; *Cashman v. Henry*, 19 Albany Law Jour. 29. *Fourth.* A bill seeking relief upon the ground of fraud must be specific in stating the facts which constitute the fraud. *Moore v. Greene*, 19 How. ( U. S.) 69; 2 Curt. C. C. 202; *Ambler v. Chouteau*, 107 U. S. 586; *Smith v. Sims*, 77 Mo. 274. Even if it be admitted that the officers of the bank knew that Owen was a defaulter at the time the bond was executed, it does not release defendants simply because such officers, when the bond was brought to the bank, did not make search for the sureties and inform them of such default. Kerr on Fraud and Mistake, 92; *Magee v. Ins. Co.*, 92 U. S. 93; *Roper v. Lodge*, 91 Ill. 518; *Hamilton v. Watson*, 12 Clark & F. 119; *Ins. Co. v. Floyd*, 10 Exch. 523; *Bank v. Sterns*, 39 Me. 532; *Bank v. Atherton*, 40 Mo. 209. ( 2 ) It was not error in the trial court to direct a reference of this case without the consent of defendants.

*Stock Co. v. Johnston,* 67 Wis. 182; *Briscoe v. Kinealy,* 8 Mo. App. 76; *Inhoff v. Sutton,* 2 L. R. C. P. 406; *Edwardson v. Garnhart,* 56 Mo. 81; *Fitzgerald v. Hayward,* 50 Mo. 516; *Davis v. Railroad,* 25 Fed. Rep. 716; *Bank v. Bogart,* 41 N. Y. Sup. Ct. 292; *Place v. Chesborough,* 63 N. Y. 315. (3) The referee committed no error in the admission of testimony offered. *First.* The deposition of Owen, taken at Chester, in cause number 61,103, was properly admitted against himself. *Second.* The witnesses, Owen, Cooke and Block were properly permitted to refresh their memories by an examination of the entries made by themselves in the books of Owen & Co., or which they knew at the time to be correct, and by inspection of the stubs upon which they had made memorandum at the time of drawing the checks that had been detached from them.

BRACE, J.—This is an action upon a bond executed on the twentieth of May, 1875, by the defendant O. E. Owen as principal, and by the defendants Edwin Harrison, W. H. Block, Charles Green and Charles P. Chouteau as sureties in the sum of thirty thousand dollars, payable to the plaintiff upon the following condition: "That, whereas the above bound O. E. Owen has been by the board of directors of the said Third National Bank of St. Louis appointed receiving teller of said bank, and whereas he, the said O. E. Owen, may from time to time, by the board of directors of the said Third National Bank of St. Louis, be continued and reappointed receiving teller of said bank.

"Now, if the said O. E. Owen shall well, truly and faithfully perform the duties of receiving teller of said bank, for and during all the time he shall hold such office as receiving teller of said bank, and for and during all the time that he may continue or act as such receiving teller of said bank, whether under the present appointment or under future reappointments, and shall

and will well, truly and faithfully account for and render over to said bank all such moneys, goods, chattels and other effects and things as may come into his possession, or under his care and charge while in the service of said bank as such receiving teller, either under the present appointment or under a future reappointment, and shall while he continues in such service, either under the present appointment or any future reappointment, faithfully and to the best of his ability perform all trusts · reposed in him, and all duties devolved on him by the law of the land, or by any by-law, rule, order or resolution of said board, now existing or hereafter made, enacted or adopted, not inconsistent with the laws of the land, then this obligation to be void, otherwise to remain in force."

In the amended petition upon which the case was tried three breaches are assigned. The third was abandoned on the trial. The substantial averments of the other two counts are as follows :

"*First.* That on the twentieth of May, 1875, and on divers other days between that day and the second day of April, 1881, the said Owen as receiving teller of said bank received on account of the plaintiff divers sums of money therein set forth aggregating $93,721.58, which moneys he fraudulently embezzled and converted to his own use and failed to account to plaintiff therefor.

"*Second.* That on the twentieth of May, 1875, and on divers other days between that day and the second day of April, 1881, there came into the possession of the said Owen, as receiving teller of said bank, a large amount of goods, chattels, effects and things, the property of said bank, of the value of $19,690.17, which he fraudulently embezzled and converted to his own use and failed to account to plaintiff therefor."

The defendant Owen made default. The defendants, Chouteau and Green, filed a joint answer and defendants, Harrison and Block, filed a joint answer ; these answers are substantially the same, so far as they

apply to the first and second counts of the petition. On motion of the plaintiff all those parts of said defendants' answers purporting to set up affirmative defenses to plaintiff's cause of action were stricken out, leaving only so much thereof as put in issue the allegations of plaintiff's petition by denial. The portion stricken out will appear from the answer of Chouteau and Green, which is as follows, all of which was stricken out except the denials in the first part thereof included within brackets:

[ "Now come the defendants Charles P. Chouteau and Charles Green, and for answer to plaintiff's amended petition, filed by leave of court, deny all liability to plaintiff on the supposed bond mentioned therein.

"Defendants deny that the allegations in said petition, touching moneys, goods, chattels, effects or things of plaintiff's received by said Owen, as receiving teller, and not accounted for or fraudulently converted to his own use, are true.

"Defendants deny that Oby Owen, as receiving teller of plaintiff, on or after the twentieth day of May, 1875, converted to his own use, or embezzled, the moneys, goods, chattels, effects and things in plaintiff's petition enumerated, or any portion thereof, for which, or any portion of which, these defendants are liable.

"These defendants are informed and believe, and so aver, that, since the execution and delivery of said supposed bond, said Owen, while in the employment of plaintiff as receiving teller, has misused and embezzled moneys of plaintiff in the amount from two to three thousand dollars; and they deny that said Owen as receiving teller has misused or embezzled any greater amount since May 20, 1875, and they aver that any sums for which these defendants would thus become liable were repaid to plaintiff by said Owen after the date of the expiration of said bond.

"And, for further defense to plaintiff's cause of action, these defendants deny that said Owen, since the execution and delivery of said supposed bond, has misused or embezzled any moneys, funds or effects of plaintiff for which these defendants are liable by virtue of·said supposed bond.]

"These defendants state that, at the date of said supposed bond, there were among other officers of the plaintiff a cashier, a paying teller and a receiving teller. That by the by-laws of plaintiff it was then provided, among other things:

"That the cashier shall sign checks and bills of exchange and countersign certificates of stock issued by the bank. He shall keep a regular record of the proceedings of the bank, furnish official extracts therefrom, and give all such information as may be required by the board or by any committee. He shall correspond as the organ of the board with all corporations or persons doing business with the bank on subjects connected with his department. He shall lay before every board of directors on their entering into office a list of the officers and persons in the employment of the bank, with their respective salaries, the names of their securities and the amounts for which they are bound. He shall carefully observe the conduct of all persons employed under him, and report to the board such instances of neglect, incapacity or bad conduct as he may discover in any of them. He shall daily examine the statement of the cash accounts of the bank and take charge of its assets, except the funds intrusted to the tellers for the daily business of the institution, and such bills receivable as may be in the custody of the note clerk. He shall superintend the general and individual accounts of the bank, lay before the directors on each board day a general statement of the. condition of the institution, promptly report to the president and directors material disagreement of the amount of cash actually on hand with the balances called for by the

books, and generally perform such other services as may be required by the board.

" These defendants say that, at the time of the execution and delivery of said supposed bond, it was the duty of said receiving teller to receive the plaintiff's money and funds ; but not to retain in his possession more thereof than was needed for transacting the daily business of his said office.

"These defendants are informed and believe, and thereupon aver, that such daily business of such receiving teller of plaintiff never required that he should retain in his possession, or have under his charge, a greater amount of plaintiff's money than two hundred dollars for each day.

" These defendants aver that said supposed bond was executed and delivered by them as sureties of said Owen, receiving teller of plaintiff, while said by-laws were in force ; and the duties of said Owen were thus defined, and in view of the limited liability and risk connected with such duties, and not otherwise.

" These defendants state that immediately after the execution and delivery of said supposed bonds said Owen, with intent to injure and defraud these defendants, and without their consent or knowledge, but with the consent and by the direction of plaintiff, assumed and took upon himself, in addition to the duties as receiving teller, the performance of duties and labors not belonging to his said office, but those appertaining to the duties of cashier of plaintiff ; and defendants aver that the action of said Owen in that behalf was fraudulently concealed from them by plaintiff, and that, if defendant Owen embezzled or misappropriated any other funds of plaintiff besides the two to three thousand dollars therein before mentioned, such additional funds came to and were in his hands in his capacity, not as receiving teller, but as cashier of plaintiff ; and such embezzlement was committed in his said capacity of cashier.

" These defendants aver that immediately after the making of said supposed bond said Owen, without defendants' consent or knowledge, but with the consent and knowledge and authorization of plaintiff, kept and retained in his possession, and under his own lock and key, all or nearly all of plaintiff's moneys and funds, the facts being concealed by plaintiff from defendants, which said funds were not necessary to said Owen for the performance of his duties as receiving teller ; nor was the keeping of said funds and moneys a part of his duty as receiving teller as prescribed by plaintiff's by-laws.

" These defendants aver that this holding of plaintiff's funds in possession of said Owen, while acting as such receiving teller, was so continued for long periods of time, and was such that said Owen, though called receiving teller, was, with the knowledge, consent and authorization of plaintiff, made to perform the functions and duties of cashier of plaintiff; the duties of said cashier being added to those of receiving teller in plaintiff's bank, all of which was without the consent or knowledge of defendants, the facts being concealed from the defendants by the plaintiff.

" These defendants state that said Owen, while acting as receiving teller of plaintiff in the time of said supposed bond, so had and held in his possession, with the knowledge, consent and authorization of plaintiff, and without consent or knowledge of these defendants, as much as five hundred thousand dollars at one time ; and held at all times after May 20, 1875, very large amounts of plaintiff's money and funds which were not necessary for any purpose connected with the proper duties of his office of receiving teller of plaintiff ; but should have been under the control of the cashier or other officers of plaintiff ; and he so continued to have under his control, without any actual count of the same or investigation of the misuses of same, for long periods of time, that is to say, from ten

days to one year or more; all of which was concealed by plaintiff from the defendants.

"These defendants aver that while said Owen, plaintiff's receiving teller, was thus permitted and authorized by plaintiff to act, after May 20, 1875, in matters foreign to his said office, and to the great increase of the risk and responsibility of these defendants as his sureties, a large license was granted him by plaintiff in respect to entries on plaintiff's books, touching the disposition of plaintiff's funds so held by him.

"These defendants state that when Owen, while acting for plaintiff, and holding and using its funds as above stated, passed any of said funds to plaintiff's cashier or paying teller, he, said Owen, was allowed and authorized by plaintiff to make the entries that were made in the plaintiff's books about such disposition; all of which was without the consent or knowledge of defendants, and was concealed by plaintiffs from these defendants.

"These defendants further allege that on or ever since May 20, 1875, a by-law of plaintiff was in force in the words following : ' No overdraft shall be allowed except on approved security or without the consent of the board or of the daily committee.'

"All these defendants aver that in violation of said by-law the said Owen, while receiving teller of plaintiff, was permitted to allow, and did allow, the payment of overdrafts upon the funds of plaintiff so in his possession, without security or the consent of said board or said daily committee ; the same being without the consent or knowledge of defendants.

"These defendants aver that immediately after May 20, 1875, said Owen, while receiving teller of plaintiff, was permitted and authorized by plaintiff, without the consent or knowledge of defendants, to receive large amounts of money for plaintiff after the regular hours

of banking, that is to say, fifty or sixty thousand dollars per day, and at any time between three o'clock and six or seven o'clock in the afternoon of the day, and not to count the money so received or make any entry of the receipt thereof until the following day or later; that the sums of money so received by said Owen, receiving teller of plaintiff, were not always entered by him on any book of plaintiff's on the next day after the receipt, but were frequently withheld from such entry for such time as he chose to withhold them, the plaintiff making no inquiry into his conduct in that behalf and giving no attention to it whatever; all which was without the knowledge of defendants and was concealed from them by plaintiff.

"These defendants aver that directly after May 20, 1875, said Owen, receiving teller of plaintiff, was employed by plaintiff in many duties not belonging to the office of receiving teller nor as defined by plaintiff's by-laws, but of a wholly different nature, the performance of which by him was not contemplated by defendants in making said supposed bond; all of which he did assume and did perform, with the consent and authorization of plaintiff, and without the knowledge of these defendants, the same being concealed by plaintiff from them, and constituting a change in the nature and duties of said office of receiving teller.

"These defendants aver that said Owen, receiving teller of plaintiff, directly after May 20, 1875, by consent and authorization of plaintiff, and without consent or knowledge of defendants, did assume to perform, and did perform, for plaintiff, then and continuously afterwards, duties belonging to the office of paying teller, cashier, general bookkeeper, individual bookkeeper, foreign bookkeeper and note clerk; and did also act for and represent plaintiff in its business of exchange and clearing house transactions, and did receive and open plaintiff's mail, and in fact did have control and management to a great extent of plaintiff's bank

and its entire business without check or limit, and also without accountability to plaintiff or any one ; the same being concealed by plaintiff from these defendants ; the same constituting a radical change of duties of said office of receiving teller, as the same is known to the law and also as defined by plaintiff's by-laws, and as contemplated by said supposed bonds.

"These defendants are informed and believe, and thereupon aver, that the manifold employments, duties and responsibilities in which said Owen, receiving teller of plaintiff, was so engaged, by the act of plaintiff, and without the consent and knowledge of defendants, were imposed upon him, because the plaintiff did not and would not provide the requisite amount of clerk-hire and labor to conduct properly and safely the business of plaintiff's bank.

"These defendants aver that they became sureties of said Owen only as receiving teller of plaintiff, and undertook for him that he should perform the duties of such receiving teller, according to the by-laws of plaintiff, and did not bind themselves for said Owen a moment longer than he was confined to the proper duties and labors of his said office of receiving teller, as the same are known to the law, also as defined by plaintiff's by-laws as aforesaid.

"These defendants aver that, by the action of the plaintiff as hereinbefore set forth in this answer, said Owen was prevented from performing the proper duties and labors of his office of receiving teller ; that plaintiff by such an action on its part lifted said Owen out of his proper place and duties of his said office of receiving teller; and thrust upon him as receiving teller duties and labors wholly different and foreign thereto ; that such action of plaintiff brought said Owen into intimate acquaintance more or less with every officer, clerk and employe of the plaintiff's bank, and gave him, said Owen, an improper influence and control of the business thereof, and furnished him opportunity,

and put him under temptation, to appropriate to his own
use plaintiff's funds in his charge as receiving teller,
which funds could not have been so appropriated to his
own use but for the duties other than those of receiving
teller imposed upon him by plaintiff, and the plaintiff
thus provided said Owen with the means of perpetrat-
ing and concealing such misappropriations ; all of which
was without consent or knowledge of these defendants,
and was concealed by plaintiff from defendants, and
was done by a change of the nature of his office of
receiving teller to the great increase of the risk of these
defendants as his sureties ; and defendants allege
that the embezzlements and abstractions of plaintiff's
funds and moneys, if any were made by said Owen as
receiving teller, his failure, if any, to account as receiv-
ing teller for the money and property of plaintiff, and
his failure, if any, to perform the trusts imposed upon
him as receiving teller, were all superinduced, brought
about and made possible solely by the imposition upon
him by plaintiff of the additional duties as aforesaid.

" Defendants aver that, while said Owen was acting
by the permission and authorization of plaintiff as in
this answer set forth, the plaintiff, in utter disregard of
the rights of these defendants, and with intent to
defraud these defendants, concealed all the facts from
them, and reposed in said Owen a blind trust and con-
fidence, never investigating his conduct, never looking to
see that he made proper and timely entries on his
books ; never, or rarely, counting his cash, and never
providing means for detecting any abuses in which he
might indulge.

"[ And for a second defense these defendants aver
that it was, and is, provided by plaintiff's charter and
the acts of congress creating plaintiff, that it shall make
to the comptroller of currency not less than five reports
during each year, according to the form prescribed by
him, verified by the oath of affirmation of the plain-
tiff's president or cashier, and attested by at least three

directors of plaintiff; each report to show in detail and under appropriate heads the resources and liabilities of plaintiff's bank at the close of business on any past day by him specified,—the same to be published in a newspaper published in the place where plaintiff is established, and that said comptroller shall also have power to call for special reports from any particular association whenever in his judgment the same are necessary, in order to a full and complete knowledge of its condition.

"These defendants aver that, prior to the execution and delivery of said supposed bond, the plaintiff, with intent to deceive and defraud the defendants, made reports to the comptroller of the currency, purporting to set forth in detail, and under appropriate heads, the resources and liabilities of the bank, the same duly sworn to and attested as provided by its charter and the acts of congress creating plaintiff, viz. : One report dated January 16, 1875, purporting to exhibit, as required by said charter and the acts of congress, the resources and liabilities at the close of business on December 31, 1874; another dated March 9, 1875, purporting to be a like exhibit at the close of business on March 1, 1875; another dated the fifteenth of May, 1875, purporting to be a like exhibit at the close of the business on May 1, 1875, and made other reports of the same kind in each year to July, 1882; that each of said reports was duly published in the *Globe-Democrat*, a newspaper published in the place where plaintiff's bank is, and was, established.

"These defendants aver that they were deceived and misled by the said reports, and the publication thereof; that the contents thereof came to the knowledge of these defendants prior to the execution and delivery of said supposed bond, and they confidently relied upon them as asserting that the plaintiff had informed itself of the conditions of its bank, its resources and its liabilities in detail, by actual examination of its books, and by actual count of its cash, and

that said reports would not have been made, sworn to and attested unless the plaintiff had counted its cash, and knew in detail the condition of its bank as represented therein. These defendants aver that, had plaintiff counted its cash prior to making any one of said reports, any misappropriation by said Owen would have been discovered. Defendants say that the reports so published as aforesaid by the plaintiff did on their faces claim and purport to convey, and did convey, to these defendants, when they read the same, the information that at the periods of time, respectively referred to in said reports, the assets and resources of plaintiff were not, and had not been for a long time previous to the date referred to in said reports, impaired or diminished by any neglect of duty, embezzlement or malfeasance of any of its officers or employes, or by any other means ; and the report published by plaintiff on the fifteenth of May, 1875, and read by defendants, set forth and conveyed information to the defendants that on the first day of May, 1875, the assets and resources of the plaintiff were not impaired or diminished by any neglect of duty, malfeasance or embezzlement of any of its officers or employes, or by any other means. These defendants were inspired by the contents of said report with confidence, and did believe, and had reason to believe, from the said report that the plaintiff had, on or about the first of May, 1875, counted the cash in charge of its tellers and found it right ; that it had then examined the books of accounts, and said Owen had been on the first day of May, 1875, and was at the execution and delivery of said supposed bond, and at the date of his several reappointments, an honest and faithful officer, and so believing and relying the defendants executed and delivered, and subsequently consented to remain on, said supposed bond.

"These defendants aver the fact to be that said Owen, at and before the first day of May, 1875, and up to and on May 20, 1875, was in default to plaintiff as

its receiving teller and so continued up to April 2, 1881 ; that he had, prior to May 20, 1875, and prior to making said supposed bond, misused and embezzled several thousand dollars of its moneys and funds ; which fact was well known to plaintiff, but was fraudulently concealed from defendants in order to induce them to execute said supposed bond.]

"And these defendants further state that, at and before the execution of said supposed bond, the by-laws of plaintiff require, and ever since have required, that plaintiff should, twice a year, during the months of January and July, by a committee of three directors, to be appointed by the president, examine and count the cash on hand, the bills receivable, the evidences of general debt, and the property of plaintiff, and compare the same with plaintiff's books in order to ascertain their agreement ; and examine the expense of general accounts of plaintiff's bank with the vouchers therefor, and report the result of their investigation to the board, and that plaintiff, by its standing committee, on the state of its bank, should suddenly, and without previous notice, count the teller's cash at least four times a year, and as much oftener as might be deemed necessary, and to count suddenly, and without notice, all the cash of the plaintiff's bank at least once a year in addition to the semi-annual count aforesaid ; and it was and is further provided, by said by-laws of plaintiff, that said counts of cash and examinations of property and books so far as practicable should be made without notice and with such variation of the time as will be most likely to frustrate any attempt to conceal error or abstraction of funds of plaintiff.

"The defendants aver that they executed said supposed bond in view of the security afforded them by the said charter and by-laws ; and the said Owen could not have misappropriated to his own use moneys or funds of plaintiff but for the change of duties aforesaid imposed upon him, and a failure of the plaintiff to

make such examination and use ordinary diligence in supervising the acts of said Owen, and the gross and fraudulent neglect and fraudulent acts of plaintiff as averred herein.

"These defendants aver that the plaintiff, after the twentieth day of May, 1875, repeatedly and without good cause failed to make the examination twice a year during the months of January and July by a committee of three directors; it performed its duties negligently and inefficiently; did not count the cash or examine the assets in such a manner as is provided by the by-laws of plaintiff, nor did the standing committee ever suddenly, and without previous notice, count the teller's cash, or the cash of plaintiff's bank, in addition to the semi-annual count aforesaid, or make any examination of the affairs of said bank, without notice, nor with such variation of time as would be most likely to frustrate any attempt to conceal error or abstraction of funds of plaintiff.

"And, these defendants aver that said Owen could not have used the extended scope of duty imposed upon him, and of the authority conferred upon him by plaintiff, for the purpose of converting to his own use any money or property of plaintiff, but for the failure to make proper examination as aforesaid and use ordinary diligence in supervising the acts of said Owen.

"And, for a fourth defense, these defendants aver that, at the time of making of said supposed bond, it was provided, and prior thereto and ever since has been provided by plaintiff's by-laws, that neither the tellers, clerks nor porters of plaintiff, while acting as such, should engage in any outdoor avocation, but should give each his entire time and attention to plaintiff's interests; and the purpose of this by-law was to remove from any such employes all opportunity and temptation arising from such outdoor avocations, to misuse therein the moneys, funds or property of plaintiff. Defendants

say that the existence of this by-law, defining the duties of said Owen, as receiving teller of plaintiff, and limiting his sphere wholly to his office of receiving teller, was a great security to the defendants, and they confidently relied upon its protection as a part of the contract between plaintiff and defendant Owen, to the effect that said Owen should perform his duties as prescribed in plaintiff's by-laws, and these defendants made said supposed bond in contemplation of the limit it fixed upon his responsibility.

"But these defendants aver that on and prior to May 20, 1875, the plaintiff, in violation of said by-laws, and of the provisions of the bond herein sued upon, had permitted and authorized said Owen, he being at the time its receiving teller, to establish in St. Louis, Missouri, where he was then, and to carry on a commercial house known as Owen & Co.; the same requiring large demands for money, the plaintiff placed him, said Owen, under conditions and temptations to misuse the money and funds of plaintiff in said business of said Owen & Co., to which temptations said Owen yielded and so used said plaintiff's funds; the facts above stated were wholly unknown to the defendants when they made said supposed bond, and being in fact concealed by plaintiff from these defendants.

"These defendants aver that if plaintiff had been informed of said Owen's outdoor avocation in the house of said Owen & Co., they would not have made or delivered said supposed bond."

The action of the court in sustaining the motion to strike out was excepted to.

On motion of the plaintiff the court appointed Arba N. Crane referee in the cause, and directed him to report on the following questions:

*First.* Whether defendant Owen, between the nineteenth day of May, 1875, and the second day of April, 1881, converted to his own use any money of

plaintiff that came into his hands as receiving teller of plaintiff, and, if so, the dates and amounts of money so converted, and, if any part was returned to plaintiff, the dates and amounts so returned.

*Second.* Whether defendant Owen between the nineteenth day of May, 1875, and the second day of April, 1881, converted to his own use any goods, chattels and things of plaintiff that came into his hands as receiving teller of plaintiff, and, if so, the dates and value of such goods, chattels and things, and of what they consisted, and, if any of such goods, chattels and things were returned to plaintiff, of what they consisted and when they were so returned.

To the action of the court in referring the cause the defendant excepted.

The referee reported in substance, in answer to the first question, that defendant Owen between the dates named of the moneys of plaintiff that came into his hands as its receiving teller embezzled and converted to his own use the sum of $60,900.43, and returned during that period the sum of thirty-nine thousand dollars; and, in reply to the second question, that he embezzled and converted to his own use goods, chattels and things of the plaintiff that came into his hands as such teller between the dates named of the value of $19,930.10 and returned nothing thereof. To the report of the referee exceptions were filed.

The exceptions of the defendants to the referee's report were overruled, judgment rendered in favor of the plaintiff for the penalty of the bond with six per cent. interest from the institution of the suit, and their motions for new trial having been also overruled the defendants Chouteau, Green and Harrison appealed.

The errors assigned and insisted upon by counsel as grounds for reversal are:

*First.* The court erred in striking out from the defendants' answer those portions to which the plaintiff's motion to strike out was addressed.

*Second.* The court erred in the compulsory reference of the case, against the objections of defendant.

*Third.* The referee erred in the admission of the deposition of Owen at Chester in cause number 61,103, and in permitting witnesses Owen, Cooke and Block to refresh their memories by an examination of the entries in the books, and by an inspection of the stubs of checks of Owen & Co.

The matters affirmatively set up in the answer as defenses to plaintiff's petition may be grouped into two classes. One conceding the validity of the bond but seeking to avoid the consequences of a breach of the conditions thereof by charging such breach to have been the result of the misfeasance and negligence of the directors, and other officers of the bank, in the management of its business, in connection with its receiving teller. The other going to the integrity of the bond, seeking to avoid it on the ground of fraud. The latter is called in the answer the "second defense," and the matter thereof is included within brackets.

I. As to the first it may be said that the single issue tendered in plaintiff's petition was that the defendant Owen as plaintiff's receiving teller received large sums of money and other assets of great value, the property of the plaintiff, which he failed "to account for and render over to plaintiff." For any money or other assets that came into his hands in any other capacity than as plaintiff's receiving teller the defendants, his sureties, are not called upon to account. For any failure upon his part to discharge any other duty as such receiving teller, or otherwise, they are not called upon to answer. The covenant of these sureties in the bond to be answerable to the plaintiff for all such moneys and other assets of the plaintiff as should come into said Owen's hands as plaintiff's receiving teller to the extent of the penalty of the bond is unconditional, and, although he may have been permitted to perform duties appertaining to other officers of the

bank, and to discharge the duties of his office in an
irregular or improper manner, and to engage in busi-
ness outside the bank contrary to its by-laws, and,
although the other officers of the bank may have been
guilty of a violation of its by-laws and of negligence
and misfeasance as charged in the answer, yet for the
consequences of none of these things are the sureties
called upon to answer, and however irregular the busi-
ness of the bank may have been conducted and what-
ever temptations may have been presented to Owen
by these irregularities, there is nothing alleged in the
answer to have been done or left undone by the bank or
its officers in respect of all these matters that could have
prevented, or in any way impaired the power of, Owen
to have honestly accounted for and rendered unto
plaintiff all such moneys and other of its effects as came
into his hands as its receiving teller. The allegations
of the answer in their whole scope, failing to show
that the discharge of this duty by Owen was in any
way prevented, obstructed or interfered with by plain-
tiff or its officers, failed to show any defense to the
breaches assigned, and the court committed no error in
sustaining the motion to strike out these parts of the
answer. *State v. Atherton*, 40 Mo. 209; *Home Savings
Bank v. Traube*, 75 Mo. 199.

II.   The remainder of the answer is devoted to the
plea of fraud in obtaining the defendants as sureties
upon the bond. The substance of this plea is that at
the time the defendants executed the bond as surety of
Owen he was in plaintiff's employ as receiving teller;
that the plaintiff was holding him out to the defendants
as a faithful officer and an honest man, when in fact he
was then in default to plaintiff as its receiving teller,
having prior thereto misused and embezzled several
thousand dollars of its moneys and funds, which fact
was well known to plaintiff, but was fraudulently con-
cealed from defendants in order to induce them to
execute said bond. The averments of the answer which

contained substantially this defense were all on motion summarily stricken out, and although these averments may have included some matter that was superfluous, and allegations that in themselves constituted no defense to plaintiff's action, yet the plea as a whole presents this defense, and the question remains to be determined, whether the plea as thus stated contains a substantial defense to plaintiff's action. If so, the court erred in its wholesale destruction, notwithstanding the fact that some of its allegations may have been redundant; and as a whole there may have been some ambiguity in the plea, that would have warranted the court in requiring it to be made more certain.

After a careful consideration of everything that has been urged by counsel for plaintiff against the sufficiency of this plea, and an examination of all the authorities cited in support of his contention, we are forced to the conclusion that it contained a good defense to this action. In *Dinsmore v. Tidball*, 34 Ohio St, 411, it was said: "Admitting that a principal in accepting a guaranty for the faithful and honest conduct of his agent is not bound under all circumstances to communicate to the guarantor every fact within his knowledge which increases the risk, yet we think there can be no doubt either upon principle or authority that where an agent has acted dishonestly in his employment the principal with knowledge of the fact cannot accept a guaranty for his future honesty from one who is ignorant of the agent's dishonesty, and to whom the agent is held out by the principal as a person worthy of confidence. The failure to communicate such knowledge under such circumstances would be a fraud upon the guarantor. The bad faith in withholding from the guarantor such information, so material to the risk assumed, is manifested not only by the fact that the dishonest character of the agent was peculiarly within the knowledge of the principal, but the holding him out as a person entitled to confidence by continuing

him in the service was equivalent to a declaration that the principal had no knowledge of the dishonesty of the agent." The main proposition contained in the foregoing statement is supported by a great weight of authority, among which are the following: *Fire Assurance Co. v. Thompson*, 68 Cal. 208 ; *Sooy v. State*, 39 N. J. Law, 142 ; *Graves v. Bank*, 10 Bush ( Ky.) 25 ; *Franklin Bank v. Stevens*, 39 Maine, 532 ; *Wayne v. Bank*, 52 Pa. St. 343 ; *Maltby's Case*, 1 Dow, Parl. Cases, 294 ; *Harrison v. Lumbermen's Ins. Co.*, 8 Mo. App. 37. Nor do we find the force of it impaired by any of the authorities cited for the respondent.

The plea in this case comes within the letter and spirit of the rule laid down and sustained by these authorities, and if the defendants could by proper evidence show that, before the execution of the bond sued on, the defendant Owen while in the plaintiff's employ as its receiving teller was guilty of embezzling its funds that came into his hands as such teller, and that plaintiff knew it, and thereafter continued him in the same position, and took this bond from the defendants without disclosing to them their knowledge of the dishonesty of its said employe, and that defendant had no knowledge thereof when said bond was executed and delivered by them they would have established a good defense to plaintiff's action. This, however, they were not permitted to do ; their plea setting up these facts was summarily stricken out and judgment rendered against them on the referee's report without issue joined or trial had upon this plea. And it is no answer to this action of the court to say that the evidential facts set up in the plea are insufficient to show that the plaintiff knew that defendant was a thief, and so knowing continued him in its employment. While they fall far short of showing such knowledge the defendants nevertheless, in plain and unmistakable language, allege that plaintiff had such knowledge ; nor can it be said that these evidential facts consisting of

the reports made and published by plaintiff of the condition of its resources at the several dates mentioned prior to the execution of the bond and while Owen was acting as its receiving teller performed no office, in the plea, since they might well be held to tend to establish the fact that the defendants had reason to believe, and did believe, at the time they executed the bond, that Owen was an honest man, and to believe that plaintiff at that time also so esteemed him, making it the more obligatory upon the plaintiff to disclose its secret knowledge, if any it had, of his dishonesty, before taking their obligation for his honesty in the future.

It was not essential to the plea that it should have set out the means by which the plaintiff came to the knowledge of Owen's dishonesty in the line of his employment; and while it could not be charged with such knowledge, unless it was shown that its officers charged with the duty and invested with the power of employing and discharging this officer, and of taking a bond for the faithful performance of his duties, had knowledge, that he had been guilty of dishonesty in the employment in which they proposed to continue him, when this bond was taken, and while they were not in conscience bound to *discover* such dishonesty, or to institute inquiry in respect thereof unless they had good reason to suspect it, before taking the bond, and many difficulties may have been in the way of proving that plaintiff took this bond *mala fides*, yet the defendants tendered that issue and it should have been tried. If before the submission to the referee, or afterwards before judgment upon his report, this issue had been tried, and found for the plaintiff, then no material injury could have resulted to defendant from the action of the court in rendering judgment against the defendants on the referee's report, unless the case presented was such that a reference was not authorized by the statute, or the referee committed error in the admission of evidence upon which he based such report.

The statute provides that the court may upon the application of either party, or of its own motion, direct a reference "when the trial of an issue of fact shall require the examination of a long account on either side, in which case the referee may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein." The examination of a long and difficult account was directly and necessarily involved in the issue tendered and joined in this case. The examination of a long and difficult account was directly and necessarily involved in the issue tendered and joined in this case. The principal in the bond in the line of his employment as plaintiff's receiving teller was from the very nature of his office in the daily receipt of large sums of money and other valuable things, the property of the plaintiff, for a series of years, of which it was his duty to keep and render a true account to the plaintiff. That he should faithfully do so the defendants by their bond obligated themselves; that he failed to do so was the whole gist and *gravamen* of the charge upon which the plaintiff sought to hold the defendants responsible upon their bond. Whether they were so responsible depended upon an examination of a long account in which the principal was necessarily to be debited with all of plaintiff's assets that he received as its teller, and credited with all of such assets as he properly disposed of in the course of his employment, the remainder if any, unaccounted for properly, being the measure of his default and of defendants' liability.

The necessity of a reference in this case was apparent upon the face of the pleadings, and is demonstrated by the report of the referee, in which, in order to ascertain the truth of the fact charged and denied, and to state properly an account of Owen's receipts and disbursements, more than a thousand pages of legal cap in type-written script is required. After a close and diligent scrutiny of this faithful and able report, counsel for appellants are able to point out but two errors for which in their opinion it should be set aside. One is that the referee erred in admitting as testimony Owen's

deposition taken at Chester in case 61,103. No reason is assigned, nor is there any apparent upon the face of the record, why this deposition was not admissible, and in the absence of any such reason the trial court must be presumed to have acted correctly in refusing to sustain the exceptions to the report on this account.

The other is that the witness Owen was permitted to refresh his memory by reference to certain entries in the books of the banks, and by inspection of the stubs of checks of Owen & Co. These entries were made in the usual and ordinary course of the business in which Owen at the time was engaged, and with the conduct of which he was familiar by having charge of the books, had been by him examined after they were made and before he testified, and found to be correct, and was used simply to confirm in detail the amount of the defalcation of which he was guilty, and to which he directly testified, and were calculated only to render accurate and definite that which otherwise was in a general manner shown to be true by his evidence. We do not think the court erred in refusing to sustain exceptions to the report on account of the admission of this evidence of Owen, or testimony given by Cooke and Block of substantially the same character. The only error we find in this record requiring a reversal of the judgment herein is that of the court in striking out the defendants' plea of fraud.

For that error the judgment must be reversed and the cause remanded in order that issue may be joined and tried on that plea. If that issue shall be found for the defendants, that will end the case ; if found for the plaintiff, then judgment may be rendered on the report of the referee ; in neither event will it be necessary to go over again the immense work that has already been done in the case, and incur the additional cost thereof, when manifestly it has been so well done, and has produced a correct result so far as done. All concur.