MARQUETTE OPERA HOUSE BUILDING CO. *v.* WILSON.

1. BUILDING CONTRACT—ACTION AGAINST SURETIES—DEFENSES.

In a suit against the sureties on a building contractor's bond to recover the price of materials furnished by a third party for which the owner of the building had become liable, and against which liability the bond indemnified him, the defendants may show, under a plea of the general issue, that plaintiff has in his hands money due the contractor sufficient to satisfy the demand.

2. SAME.

Plaintiff cannot, under such circumstances, be compelled to apply upon his demand an amount due the contractor for extras, where the obligation to pay for such extras did not arise until the architect had given an estimate therefor, and it is not shown that such estimate was made; it being the duty of defendants, if they relied on a breach of contract in that the architect failed to give such estimate, to give notice of such defense.

3. SAME—CONSTRUCTION OF BOND—LIABILITY OF SURETIES.

A builder's bond given to the owner to indemnify him and save him harmless from such claims for labor or materials furnished in the construction of the building as might become liens thereon, or which the owner might be compelled to pay, creates no liability on the part of the sureties thereunder to indemnify the owner for payments made by him for labor and materials furnished for which he was not liable and the

claims for which were incapable of becoming liens upon the building.

4. SAME—RELEASE OF SURETIES.

Where a building contract provided that a certain per cent. should be withheld by the owner from each estimate until final certificate of completion was given by the architect, and a bond collateral thereto purported to indemnify the owner against loss by reason of any liens for labor or material used in the construction of the building, a failure to retain the stipulated amount, and a payment upon claims which were not and could not become liens, operated to reduce *pro tanto* the obligation of the sureties.

Error to Marquette; Stone, J. Submitted January 29, 1896. Decided May 12, 1896.

*Assumpsit* by the Marquette Opera House Building Company against Robert J. Wilson and James B. Moore as principals, and Daniel W. Powell and others as sureties, upon a building contractor's bond. From a judgment for plaintiff on verdict directed by the court, the defendant sureties bring error. Reversed.

The plaintiff, in August, 1890, entered into a contract with the defendants Wilson & Moore for the construction by Wilson & Moore for plaintiff of a block in the city of Marquette, according to the plans and specifications prepared by D. Fred Charlton, architect. The provisions of the contract which have a bearing on the question involved are as follows:

"Should any alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum herein agreed to be paid for the work according to the original specification shall be increased or diminished, as the case may be."

"Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail

in the performance of any of the agreements on their part herein contained, such refusal, neglect, or failure being certified by the architect, the owners shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due, or thereafter to become due, to the contractors under this contract."

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to the contractors for said work and materials shall be $45,000, subject to additions or deductions on account of alterations as hereinbefore provided; and that such sum shall be paid in current funds by the owners to the contractors, in installments as follows: On monthly payments on estimates to be given by the architect, 15 per cent. to be deducted from each estimate until final certificate of completion is given by the architect, when all back percentages are to be included. And it is further mutually understood and agreed between the said parties that the owners have the right to furnish different materials for the said building at the regular market prices as they may see fit, and such furnishing of material shall be considered as cash value in making estimates of work by the architect, and as payment upon the same; it being understood that the final payment shall be made within 30 days after this contract is completely finished: *Provided*, that in each of the said cases, the architect shall certify in writing that all the work upon the performance of which the payment is to become due has been done to his satisfaction; and *provided*, further, that before each payment, if required, the contractors shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractors; and, further, that if, at any time, there shall be any lien or claim for which, if established, the owners of the said premises might be made liable, and which would be chargeable to said contractors, the owners shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify them against such lien or claim, until the same shall be effectually satisfied, discharged, or canceled. And, should there prove to be any such claim after all payments are made, the contractors shall refund to the owners all moneys that the

latter may be compelled to pay in *discharging any lien on said premises, made obligatory in consequence of the former's default.*"

As security for the performance of this contract, the defendants Wilson & Moore, as principals, and the contesting defendants, as sureties, executed a bond, reciting the execution of the contract, and with further recitals and conditions as follows:

"And whereas, it is agreed in the said contract that the said Wilson & Moore shall build the said block according to the said contract, for the sum of $45,000, and are also to deliver the said building free from all liens and incumbrances for labor or material used in the erection of the same: The conditions of this obligation are such that the said Wilson & Moore shall pay for all labor and materials used in the erection of the said block, and hold the said Marquette Opera House Building Company free from all obligations therefor; and if the said Wilson & Moore shall so pay up all said obligations for labor and materials furnished upon the completion of the said block by the 1st of July, 1891, and shall, from time to time, save the said Marquette Opera House Building Company harmless from any obligations for such labor and material or annoyance as to the same, then this obligation shall be void," etc.

The declaration avers that, to enable Wilson & Moore to obtain material for the building, the plaintiff, on the 1st of March, 1891, at Wilson & Moore's request, did promise to pay to Bice, Pendill & Co. the sum of $3,-595.51, and subsequently paid the same, and that Wilson & Moore had not paid the same, and avers that it is a breach of the bond. The plea was the general issue.

On the trial, the plaintiff showed that Wilson & Moore contracted with Bice, Pendill & Co. for material, but that, after furnishing a small portion thereof, Bice, Pendill & Co. refused to deliver any more, unless the plaintiff would become responsible for the pay; and thereupon, in order to induce Bice, Pendill & Co. to continue the delivery of said materials, plaintiff agreed to become re-

sponsible therefor, and that estimates therefor should be made by the architect, and the amouut thereof be paid directly to them by the plaintiff, instead of paying through the hands of Wilson & Moore.

Up to the time of this arrangement with Bice, Pendill & Co., April 2, 1891, there had been paid to Wilson & Moore, on the contract, $26,495.50, leaving unpaid about $16,000 of the contract price if Wilson & Moore were charged at that date with the amount of Bice, Pendill & Co.'s bill, subsequently paid. The plaintiff offered evidence of subsequent payments, made on estimates, to payees named in the orders drawn by Wilson & Moore.

The defendants offered to show, as matter of defense: (1) That additional material was furnished by Wilson & Moore, amounting to about $1,800; (2) that the payments made on the orders given subsequent to April 2d were made upon claims for labor and material which had ceased to be potential liens at the time, and that, therefore, if plaintiff was justified in assuming the claim of Bice, Pendill & Co., it had it in its power to pay the same out of the funds in its hands, and voluntarily paid the same on claims on which it was not liable; and (3) that the plaintiff had failed to withhold 15 per cent. of the contract price from the contractors,—and contended that, by this neglect, the sureties were discharged.

The learned circuit judge, while expressing a doubt as to his conclusions, and with the purpose of presenting a record upon which these questions could be raised and passed upon by this court, held that the first defense was inadmissible under the pleadings, and that, as to the second defense, the defendants' undertaking was absolute to pay the workmen and for material, and therefore the plaintiff had the right to make payments for any labor or material which went into the building, and might recover for such payments in an action on the bond.

*E. J. Mapes* (*W. S. Hill*, of counsel), for appellants.

*Ball & Ball*, for appellee.

Montgomery, J. (*after stating the facts*). We think the defendants were entitled to show, under a plea of the general issue, that the plaintiff had money in its hands, due to Wilson & Moore under the contract, which was equal to the amount which it was required to pay to Bice, Pendill & Co. Indeed, the circuit judge so held, and applied a balance which was admittedly due under the claim, but held that the amount due Wilson & Moore for extra work could not be so applied, for the reason that the obligation to pay for these extras arose only after the architect had given an estimate therefor, and that this was not shown; that the defendants' cause of complaint, if any, was the failure of the architect to give estimates; and that this breach of contract, if any such existed, should have been set up in the pleadings. We think there was no error in this ruling. Had Wilson & Moore brought suit on the contract, it would have been necessary to aver this breach, and we think on this issue the plaintiff should have had notice of it. No offer was made to amend. Had there been, there is no doubt an amendment would have been permitted. ·

The second question raised depends upon the construction placed upon the bond. On the part of the plaintiff it is contended that the bond should be construed as an absolute engagement to pay for labor and material, and that it follows that, on a failure of Wilson & Moore to do so, the plaintiff had the right to make payment and charge it to Wilson & Moore, and recover of the sureties on the bond. The defendants, on the other hand, while apparently conceding that, as to any claim which had become a lien upon the property, the plaintiff might take this course, contend that as to such demands not constituting liens, and particularly as to demands which, because of the lapse of time, had ceased to be liens, and were beyond the possibility of becoming liens, the plaintiff had no such right; that the condition of the bond as limited by the recital was not so broad as to obligate the sureties to the actual payment of all claims for

material and labor, but only to payment for such as were or might become liens. The plaintiff relies upon *Knapp* v. *Swaney*, 56 Mich. 345. That case was *mandamus* to compel the allowance by the building committee of the board of supervisors of a claim for building a courthouse. The relator stood in the shoes of the contractor, and the contract under which they were operating provided that the payments were to be made on estimates, but that, as a condition to such payment, it should appear that there was no legal or lawful *claim against the contractor* in any manner from any source whatever. The cases cited from Nebraska have followed *Knapp* v. *Swaney*, but do not give much aid in the construction of the instrument under consideration. It is to be noted that, in the contract between plaintiff and Wilson & Moore, the latter only undertook to deliver the building clear of liens, not to pay their debts for which liens did not exist. Presumptively, the bond executed, as the declaration avers, "in consideration of the execution of the contract," was intended to insure the performance of some duty imposed by the contract upon the principals, Wilson & Moore. The bond recites the execution of the contract, the obligation of Wilson & Moore to construct the building, and deliver the said building free from any liens or incumbrances for labor or material used in the construction of the same. The condition is to pay for all labor or material used in the erection of the said building, and hold the said Marquette Opera House Building Company free from any obligations therefor. Is not this obligation met by paying such of the demands for labor and material as the opera house company is subject to be made liable for, if not met by the builders, or was it the intention, as expressed in this condition, to enlarge the obligation of Wilson & Moore, as expressed in the contract, and as contained in the recital of the bond? We think the former the true construction. It is well settled that the general words in the condition of any bond may be restricted by a particular recital. As was said by Lord

Ellenborough in *Payler* v. *Homersham*, 4 Maule & S. 423: "Common sense requires that it should be so, and, in order to construe any instrument truly, you must have regard to all its parts, and most especially to the particular words of it." In *Bell* v. *Bruen*, 1 How. 184, it was said: "The general rule is well settled, in controversies arising on the construction of bonds with conditions for the performance of duties, preceded by recitals, that, where the undertaking is general, it shall be restrained, and its obligatory force limited within the recitals." See *Sanger* v. *Baumberger*, 51 Wis. 592. Under this construction, the plaintiff had the right to protect itself by payment of any claims which were at the time liens, and upon which Wilson & Moore were in default, or to pay any claims which might mature into liens, and upon which they were in default. But we think it was not within the contemplation of the parties that the plaintiff would be at liberty to make payments upon debts of Wilson & Moore for labor and material after such demands had ceased to be liens upon the property, and charge the sureties thereon.

The parties are not agreed upon the question of fact as to whether the plaintiff failed to retain the 15 per cent. provided in the contract. If, in fact, the plaintiff failed to retain this much out of the estimates, and the payments made were voluntary,—that is, made upon claims which were not and could not become liens,—the obligation of the sureties would be reduced *pro tanto*. *Warre* v. *Calvert*, 7 Adol. & El. 143; *Bragg* v. *Shain*, 49 Cal. 131; *St. Mary's College* v. *Meagher*, (Ky.) 11 S. W. 608.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.