THE N. K. FAIRBANK COMPANY, Respondent, v. THE AMERICAN BONDING & TRUST COMPANY OF BALTIMORE CITY, Appellant.

St. Louis Court of Appeals, December 9, 1902.

1. **Bonds: CONDITIONS: CONTRACTS: SURETY: SURETY COMPANY.** A bond of a surety company was conditioned that if the principal, a corporation, "shall in any manner or by any means, misuse, misappropriate, or misapply said paper or plates," to be furnished by the obligee, "or in any manner dispose of the same, or convert them to their own use, amounting to larceny or embezzlement of paper or plates, then this bond to be of full force." The principal appropriated to its own use a large amount of paper furnished by the obligee, and in an action on the bond the surety claimed that, as a corporation could not commit larceny or embezzlement, the surety was not liable. *Held,* that the effect of the bond was to raise a liability in two contingencies: first, if the principal should in any manner misappropriate or misapply the paper; and, second, if it should in any manner, amounting to larceny or embezzlement, dispose of the same or convert it to its own use.

2. ———: ———: ———: ———. Plaintiff contracted with a printing company to print certain wrappers or plates, and with paper to be furnished by plaintiff. The company furnished a bond to indemnify plaintiff against loss by the misappropriation or misuse of any part of the paper or plates so furnished. As each lot of paper was delivered a written agreement was entered into by plaintiff and the company, whereby it acknowledged the receipt as bailee of the paper then delivered, and agreed to print and restore the identical paper as wrappers to the plaintiff as ordered, and, so long as any of the paper remained in such company's possession, it continued to be the property of plaintiff. Before making such auxiliary agreements, the attorney in fact of the surety on the bond was notified thereof, and asked if he had any objection to the form and conditions therein contained, and he answered that he had not. *Held,* that the original contract was not changed, nor the responsibility of the surety increased, by such auxiliary agreements, and the surety was not relieved thereby.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Johnson, Houts, Marlatt & Hawes* for appellant.

(1)    The larceny or embezzlement of $858.19 is, under our statute, a felony.   R. S. 1899, secs. 1914, 1899. (2)    Corporations can not, in the very nature of things, be guilty of a felony.    Clark & Marshall on Priv. Corp., p. 656, and cases cited; Cook on Corp., sec. 15d; 7 Am. and Eng. Ency. of Law (2 Ed.), p. 844; State v. Railroad, 23 Ind. 362; State v. Milling Co., 20 Me. 41; Power Co. v. Bethel Co., 64 Me. 441; Commonwealth v. Swift Run Co., 2 Va. Cas. 362.    (3)  Our statutes defining larceny and embezzlement include only natural persons.   R. S. 1899, sec. 1898, 1912, 1914.

*J. F. & R. H. Merryman* for respondent.

(1)    The first question, then, that presents itself is:   Was Doggett overreached by Hennings, or was the Hogan Printing Company, a corporation, capable of embezzling the paper in question or committing any act which amounts to a felony?    (2)    The statute provides (sec. 1914, R. S. 1899):   "If any carrier, bailee, or other person, shall embezzle or convert to his own use, etc., he shall, on conviction, be adjudged guilty of larceny and punished in the manner prescribed by law for stealing property of the nature or value of the article so embezzled, taken or secreted."    (3)    In the American and English Encyclopedia of Law (2 Ed.), vol. 7, page 840, it is said:   "Whether or not corporations are liable under statutes commanding or forbidding certain acts under a penalty, depends upon the intention of the Legislature, to be ascertained from the language and purpose of the statute. . . . In some of the cases it seems to have been held in effect that, since statutes imposing a penalty are to be strictly construed, they do not apply to corporations unless they are made to do so in express terms, or by the clearest implication. . . . But the better opinion is against such a view

and to the effect that penal statutes are applicable to corporations, as well as to natural persons, if their language and purpose show an intention to include them. Though corporations may not be mentioned, the word 'person' or 'persons' will include them, if they are within the spirit and purpose of the statute. . . . It seems to have been thought at one time that a corporation was not liable to indictment. But if such a doctrine was ever recognized, it has long since been exploded. It has been shown that a corporation may be liable for the torts of its officers or agents. The same is true to some extent of their criminal acts. A corporation, being impersonal, can not be imprisoned, but it may be punished by fine or by forfeiture of its charter.'' (4) In the same chapter, on page 845, it is said: ''It would seem clear that corporations should be regarded as persons within the meaning of a statute making certain acts by 'any person' a crime, if they are within the purpose of the statute; and so it has been held.'' (5) Mr. Wharton, in his work on Criminal Law, section 87, says, in speaking of corporations: ''No good reason can be assigned why the same acts for which these bodies are subject to civil suit may not equally be the basis of criminal proceedings when they result in injury to the public at large.''

GOODE, J.—The N. K. Fairbank Company made a contract with a corporation in the city of St. Louis, known as the James Hogan Printing Company, whereby the company last named agreed to print certain wrappers for the Fairbank company at stipulated prices, the Fairbank company to furnish the necessary stock of paper and the plates. This agreement was made by a written offer submitted by the Hogan Printing Company to the Fairbank Company on the fourth day of May, 1899, and accepted on the twenty-third of that month. Before the respondent would accept the printing company's offer, respondent exacted a bond in the sum of $5,000 as indemnity against loss by the misappropriation or misuse of any part

of the paper or plates, which the respondent was to furnish to the printing company to be used in making the wrappers. This bond was executed by the Hogan Printing Company, with the appellant, the American Bonding & Trust Company, as surety, and contains the following condition:

"Now, therefore, if the said James Hogan Printing Company shall in any manner or by any means. misuse, misappropriate or misapply said paper or plates, or in any manner dispose of same or convert them to their own use, amounting to a larceny or embezzlement of said paper and plates, then this bond to be of full force and effect; otherwise to be void, conditioned: That said N. K. Fairbank Company shall not hold the said James Hogan Printing Company for any loss that may be occasioned by them owing to destruction by fire, cyclone or any other act of God."

After the execution of the bond, the Fairbank company accepted the offer of the Hogan Printing Company and on several occasions delivered to the latter a large stock of paper to be used in making wrappers. At each delivery of paper the two companies made a contract in regard to it as follows:

"This agreement, made and entered into this ninth day of April, 1900, by and between N. K. Fairbank Company, a corporation, bailor herein, party of the first part, and James Hogan Printing Company, a corporation, bailee herein, party of the second part, witnesseth: this day delivered to the party of the second part, bailee, the following described paper, to-wit: M. F. White, Alkali paper, 500 reams, 36 1-8x46—60 lbs., valued at eight hundred and seventy-three dollars, now in their premises at 314 Elm street, St. Louis, Mo.

"And the said party of the second part, for and in consideration of a certain contract heretofore entered into by and between the party of the first part and party of the second part herein, hereby agrees that from, in and upon said above mentioned paper to print, cut and deliver over and to the party of the first part, as ordered, certain wrappers, and restore said identical

paper, printed and cut into wrappers as aforesaid, to the party of the first part.

"It being expressly understood that, as long as said above-mentioned paper, the property of the party of the first part, remains in the possession of the party of the second part, that it is held entirely by said party of the second part at the risk of the owner, the said party of the first part.

"In witness whereof, the parties of the first and second part hereto set their hand and seal this —— day of ————.

"N. K. Fairbank Co., Bailor.
"By Dewey A. Hickey,
"Party of the First Part.
"James Hogan Printing Co., Bailee,
"By George T. Dunn,
"Party of the Second Part."

A good part of the paper delivered to the Hogan company was not used in printing wrappers for the respondent, but was converted by the printing company to its own use and worked up in doing jobs for other persons. It was proven that some three hundred and twenty reams were thus misappropriated by the direct order of the vice-president and general manager of the Hogan Printing Company and two of its other officials.

This action was brought on the bond to recover the value of the misappropriated paper and the answer of the appellant set up the following defenses: First, a general denial; second, that the bond was given after the contract between the Fairbank company and Hogan Printing Company had been made and was therefore without consideration; third, that the original agreement was modified by new agreements of the form above set forth, when deliveries of paper were made to the printing company and that the paper was furnished not under the original, but under the subsequent agreements, by which the appellant was not bound; fourth, that no liability arose on the bond unless the paper was

Vol 97 app—14.

converted by the printing company in such a way as to amount to embezzlement or larceny and that, the printing company being a corporation, it could not be guilty of embezzlement or larceny; fifth, that bankruptcy proceedings were instituted against the Hogan Printing Company, in which it was adjudged a bankrupt and a trustee appointed to take charge of its assets, which were more than sufficient to pay the respondent's claim; that appellant requested respondent to prefer its claim against the bankrupt estate in the hands of the trustee, but respondent neglected and refused to do so.

The new matter in the answer was put in issue by a replication.

Evidence was introduced by the respondent proving its case as above stated and, no evidence being offered by the appellant, a judgment was entered against it for the penalty of the bond to be satisfied on the payment of $952.58.

An appeal was taken to this court.

1. As to the defense, that there was no consideration for the bond and the one based on the alleged refusal of the Fairbank company to prove up its claim in the bankrupt proceedings on the appellant's demand, it is sufficient to state that the evidence failed to support them.

The bond was executed and given before respondent would accept the Hogan Printing Company's offer or make any contract with it for wrappers; and instead of appellant demanding that the respondent assert its claim of title to the paper or the value thereof in the bankruptcy case against the Hogan Printing Company, the president of the American Bonding & Trust Company notified the respondent's attorney not to take that step, saying all the appellant asked of the respondent was to furnish appellant's attorney in St. Louis the names of witnesses to be subpoenaed before the grand jury in regard to the conversion of the paper and then the claim in suit would be paid.

2.  The bond does not mean respondent's paper must necessarily have been stolen or embezzled to create a liability on that instrument.  Its effect was to raise a liability in two contingencies.  If the Hogan company should in any manner or by any means misuse, misappropriate or misapply the paper, or should in any manner amounting to larceny or embezzlement dispose of the same or convert it to its own use.  We think the intention of the instrument was to make any misuse or misappropriation of the paper turned over to the printing company by the Fairbank company a breach of the bond, and to protect the bailor against all wrongful acts of the bailee in using the former's property, whether such acts constituted a crime or not. This interpretation is enforced by the last clause of the condition, which exempts the printing company and, of course, its surety, from any loss occasioned by fire, cyclone or other acts of God, thus specifying losses which the bond was not to cover.

3.  Neither do we accede to the contention that the contracts in the nature of receipts, entered into by the principal parties when deliveries of paper were made, altered the original contract so as to release the surety, or that the paper was received by the printing company under the subsequent contracts instead of the original one.  Those subsequent memoranda emphasized the fact that the paper remained the property of the Fairbank company and bound the printing company to cut it into wrappers and restore the identical paper made into wrappers to the Fairbank company, which was in accordance with and in enforcement of the original agreement and in no way increased the responsibility of the surety.

Besides, Thomas C. Hennings, attorney in fact of the American Bonding & Trust Company and its representative in St. Louis, was notified in writing of the making of said auxiliary contracts and requested to say whether he had any objection to the forms and conditions therein contained, in response to which notice Mr. Hennings said he had no objection to the ad-

ditional contracts, because the bond only covered embezzlement or misappropriation.

Much is said in the appellant's brief about the favoritism shown to sureties by the law, and that their obligation is, *strictissimi juris,* all of which is accurate, since the law began early to deal tenderly with sureties out of consideration for the gratuitous nature of their promises. It is the law that a surety has the right to stand on the strict terms of his agreement; but what his agreement is, is to be determined by the same canons of interpretation applied to other contracts, without technical nicety or strained distinctions. Beers v. Wolf, 116 Mo. 179; State ex rel. v. Tittman, 134 Mo. 162; Harburg v. Kumpf, 151 Mo. 16. If this doctrine is applied to gratuitous sureties it may certainly be applied to a company whose business is to become surety for hire. Appellant was paid to make this bond and a plain liability arose on it which ought to be discharged.

The judgment is affirmed. *Bland, P. J.,* concurs. *Barclay, J.,* not sitting.