# THE NEW YORK LIFE INSURANCE COMPANY, Respondent, v. THOMAS H. McDEARMON et al., Appellants.

### Kansas City Court of Appeals, November 16, 1908.

1. **TRIAL PRACTICE: Judge's Written Opinion: Conclusions of Fact.** The written opinion of the trial judge is a mere statement of the reasons for his decision made for the convenience and satisfaction of the parties and is not required to be delivered to the clerk contemporaneously with the judgment and is not a conclusion of fact and law required by the statute.

2. **APPELLATE PRACTICE: Absence of Finding: Duty of Reviewing Court.** In the absence of findings of fact or declarations of law in the record the reviewing court should consider the evidence from the standpoint most favorable to the successful party below, and if substantial evidence supporting the finding can be found the judgment should be affirmed.

3. **PRINCIPAL AND SURETY: Contract: Construction of Bond.** A contract between the principal and agent did not provide for the advancement of any money to the agent. The bond given by the agent in obedience to the contract provided for the accounting for and payment of all moneys advanced under the terms of the agency for the purpose of "enlarging his business or otherwise." The principal during the life of the bond advanced the agent money for the support of the latter's family. *Held,* such advancement did not come within the purview of the bond or contract and the sureties were not liable therefor.

4. ———: ———: ———: **Otherwise: Ejusdem Generis.** The "otherwise" following the enumeration of particulars has an *ejusdem generis* interpretation.

5. ———: ———: ———: **Canons.** The surety has a right to stand on the strict terms of his agreement, but what his agreement is, is to be determined by the common canons of interpretation applied to other contracts without technical nicety or strained discussions.

6. ————: ————: ————: ————. The advances to the agent shown in the evidence are held to have been purely personal and not for the purposes of "enlarging the business" within the meaning of that term as used in the bond.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

REVERSED.

*Stewart Taylor* and *J. D. McCue* for appellants.

*Frank P. Sebree* and *Thad. B. Landon* for respondent.

(1) As no declarations of law were asked or given, and the court was not requested by either party to make special findings of fact and conclusion of law, there is nothing before this court for review except the question whether there is any evidence to support the judgment. R. S. 1899, sec. 695; Rausch v. Michel, 192 Mo. 303; Railroad v. Holschlag, 144 Mo. 257; Nichols v. Carter, 49 Mo. App. 401; Paint & Color Co. v. Shooting the Chutes, 74 Mo. App. 661; Gilmore v. Harp, 92 Mo. App. 80; Steele v. Johnson, 96 Mo. App. 147; Freeman v. Hemenway, 75 Mo. App. 617; McQuillen Mo. Prac., sec. 711; Cochran v. Thomas, 131 Mo. 268; State v. Willis, 106 S. W. 584; Garrison v. Lyle, 38 Mo. App. 558. (2) The suit was properly prosecuted in the name of the New York Life Insurance Company. R. S. 1899, sec. 764. (3) The sureties are liable for the moneys advanced the agent. Provision is made for such advances by the terms of the bond. Brandt on Suretyship, sec. 107; Blair v. Insurance Co., 10 Mo. 564; State ex rel. v. Smith, 173 Mo. 407; Fairbank Co. v. Bond & Trust Co., 97 Mo. App. 205; Beers v. Wolf, 116 Mo. 179; Fink v. Bank, 178 Pa. St. 154, 56 Am. St. Rep. 746; Harburg v. Kumpf, 151 Mo. 25; Insurance Co. v. Smith, 105 Mich. 353; Chamberlain & Gillete v. Hodgetts, 99 S. W. 161; B. & L. v. Obert, 169 Mo. 515.

JOHNSON, J.—Action on a bond brought by the obligee against the principal obligor and his sureties. A jury being waived, the court heard the evidence and found that defendants were indebted on the bond in the principal sum of $597.26. Judgment was entered for plaintiff for $1,000, the penalty of the bond, and execution was ordered for $759.94, the amount of the debt with interest to the date of the judgment. Defendants appealed. A number of grounds is assigned for the reversal of the judgment, but the main contention of defendants is that the indebtedness in controversy was not included within the terms of the bond. The view we take of this question renders the discussion of others unnecessary and compels the reversal of the judgment.

No findings of fact were made nor were declarations of law asked by either party or given by the court. An exhaustive written opinion was delivered by the court and is copied in the bill of exceptions, but we shall not treat it as the equivalent of findings of fact and conclusions of law duly made a part of the record. "The law makes no provision for an opinion in writing by the judge of the trial court. It was entirely optional with him whether he would write out his conclusions and after he had reduced them to writing whether he would file the paper and when. If he elected to write an opinion, it was not necessary that it should be delivered to the clerk at the time of the rendition of the judgment, but could be handed to him at the pleasure of the judge. In other words, it was not a paper in the case provided by law, but a mere statement of the reasons for his decision, written by the judge for the convenience and satisfaction of the parties, and its delivery to the clerk was not necessarily contemporaneous with the judgment." [Railway v. Holschlag, 144 Mo. l. c. 257; Rausch v. Michel, 192 Mo. l. c. 303;

Nichols v. Carter, 49 Mo. App. 401; Paint & Color Co. v. Shooting the Chutes Co., 74 Mo. App. 661.]

There being no finding of fact or declarations of law in the record, it becomes our duty to consider the evidence from the standpoint most favorable to plaintiff, the successful party below, and could we find substantial evidence supporting the judgment, it would be our duty to affirm it. The facts in evidence which are material to the consideration of the question in hand are not in serious controversy.

August 1, 1902, defendant Thomas H. McDearmon, an experienced life insurance agent, was employed by plaintiff, a life insurance company, as a solicitor in Kansas City and vicinity. The contract of employment executed on the date mentioned was in writing and is quite voluminous, but its contents are not now important except in the respects that the agent was to give his whole time to the service of his employer, was to be paid by commissions on the business he secured.; that the company might offset any debt due it from the agent against commissions earned and that the agent should deliver to the company a bond conditioned for the faithful performance of the contract and of all duties pertaining to the agency. The contract did not require the company to make advances of money to the agent for any purpose. Five days later (August 5th), the bond in suit was delivered to plaintiff. Its pertinent recitations and conditions are as follows:

"The condition of this obligation is such, that, whereas the above bounden Thos. H. McDearmon has been appointed by said company as its agent for the purpose of canvassing for applications to said company for assurance on the lives of individuals, and of performing such other duties in connection therewith, as may be required by the officers of said company.

"Now, if said Thos. H. McDearmon shall well and faithfully discharge his duties as such agent, and if said Thos. H. McDearmon shall well and truly pay

over all moneys at any time coming into his hands, or at any time collected by or received by him, or for which he may be liable, which it shall be his duty to pay over as such agent, whether the same shall be or shall have been received or liability therefor incurred by him personally and solely, or through or together with any copartner, coagent, subagent or other person, also all moneys which he now owes or hereafter may owe said company, or for which he may be liable to said company on account of loans or advances made to said Thos. H. McDearmon during the continuance of the present agency of said Thos. H. McDearmon or any future agency, for the purpose of enlarging his business or otherwise, and whether the same shall have been advanced under the terms of the agency agreement between said Thos. H. McDearmon and said company or otherwise, and whether said Thos. H. McDearmon shall have made any express promise to repay the same or otherwise, then this obligation shall be void, otherwise to remain in full force and effect. It being understood and agreed that this obligation shall not be annulled or revoked without the consent of said company, but shall be and remain in force so long as said Thos. H. McDearmon shall continue to be the agent of said company, whether under his existing appointment or any future one, and whether such present or future agency may be sole, or whether said Thos. H. McDearmon be joined with any other person or persons, and until all transactions under such agency shall have been finally adjusted and settled, and all liabilities of said Thos. H. McDearmon hereinbefore referred to shall have been discharged."

Mr. McDearmon's services were very unsuccessful and the employment was ended in February of the following year. From August 6, 1902, to the end of the agency, plaintiff, from time to time, advanced money to its agent. The aggregate of these advances was $625, and there can be no reasonable controversy over the

facts that the money was used by the agent in the support of his family and was advanced to him for that purpose. The question for our solution is, Did an indebtedness of such character fall within the obligation of the bond which required the agent to repay loans or advances made to him during the agency "for the purpose of enlarging his business or otherwise?" The position of plaintiff is well expressed by the learned trial judge in the following extract from his written opinion:

"The testimony shows Thomas H. McDearmon to have been a married man and the father of living children. He was under a legal and moral obligation to support his family. Any inability on his part to earn money in his agency to support his family would have a direct tendency to withdraw him from that agency, and, conversely, any money advanced to him during the term of his agency to enable him to supply the wants of those dependent upon him would necessarily enable him to remain so much the longer in that business and prosecute, or 'enlarge' it the more vigorously. I regard Mr. McDearmon's maintenance of himself and of his family as identical in this connection, and that it is entirely immaterial whether the moneys went to support Mr. McDearmon or his wife and children. Counsel for plaintiff have in this language very well presented this point: 'Whether he (McDearmon) used it (the advances) in the support of his family, or what he did with it, does not concern the plaintiff or the Boones in this case. The fact is that it was advanced to him while he was acting as agent and it would not have been advanced to him if he was not acting as such agent. It was advanced to him for the purpose of enabling him to carry on the business of soliciting insurance for the company. Without such advances he would not have been able to transact business. He had to live while transacting business for the company and his family had to be supported. . . . Clearly

these advances were made to him so that he might be
enabled to transact and enlarge his business.' "

This reasoning fails to convince us of its soundness.
We think loans or advances to the agent for the purpose
of enabling him to support his family were a kind of
indebtedness the payment of which the language of
the bond shows quite clearly the parties did not intend
to secure. "The general rule is well settled, in con-
troversies arising on the construction of bonds, with
conditions, for the performance of duties, preceded by
recitals: that when the undertaking is general, it shall
be restrained and its obligatory force limited within the
recitals." [Bell v. Bruen, 1 Howard (U. S.) 169;
Sanger v. Baumberger, 8 N. W. 421; Association v.
Conkling, 90 N. Y. 116; Building Co. v. Wilson, 67
N. W. 123; Blades v. Dewey, 136 N. C. 176; Insurance
Co. v. Johnson, 12 N. E. 205.] The recitals of the bond
in suit lend emphasis to the fact that it was not the
intention of the parties to secure the payment to plain-
tiff of all kinds of loans or advances it might make
to its agent but only such as might be made for the
specific purpose of enlarging the business of the agent.
Nor was the scope of the obligation enlarged to include
other classes of loans by the employment of the phrase
"or otherwise" in the condition of the bond.

"The words 'or otherwise' in law when used as a
general phrase following an enumeration of particulars
are commonly interpreted in a restricted sense, as re-
ferring to such other matters as are kindred to the
classes before mentioned. . . . The phrase 'or other-
wise' when following an enumeration should receive an
*ejusdem generis* interpretation." [6 Words and Phrases
Jud. Defined, 5105; St. Joseph v. Porter, 29 Mo. App.
605; Lowenstein v. Fidelity & Casualty Company, 88
Fed. l. c. 478; Grumley v. Webb, 44 Mo. 444; State v.
Krueger, 134 Mo. 262.]

With the scope of the obligation restricted as we
have found, to the repayment of loans or advances made

for the specific purpose of enlarging the agent's business, how can it be said in reason that loans to the agent to support his family were within this class? We apply the well settled rule invoked by plaintiff that in ascertaining the true intent of the parties to a contract of suretyship the language employed in the contract should be governed by the rules of interpretation that apply to other classes of contracts. The rule thus is stated by Judge GOODE in Fairbank Co. v. American Bonding & Trust Co., 97 Mo. App. 205: "Much is said in the appellant's brief about the favoritism shown to sureties by the law, and that their obligation is *strictissimi juris*, all of which is accurate, since the law began early to deal tenderly with sureties out of consideration for the gratuitous nature of their promises. It is the law that a surety has the right to stand on the strict terms of his agreement; but what his agreement is is to be determined by the same canons of interpretation applied to other contracts without technical nicety or strained distinctions."

But after measuring the language of the bond by this rule, the conclusion is irresistible that it was foreign to the intention of the parties to secure the repayment of any other class of loans than that for the specific purpose of enlarging the agent's business. Loaning him money to keep his family, perhaps, had an indirect relation to that object, but certainly it bore no direct relation to it. It is true the agent being without other resources than his employment probably would have been compelled to seek other means of support had these advances been denied him. Concede that his family had to be supported by him while he was at work enlarging the business, the discharge of that duty bore no closer relationship to the business object of his employment than did the facts that he had to wear clothes and be kept in good health. Suppose he had fallen ill during the employment and plaintiff had loaned him money to pay his doctor and drug bills. Would it be contended

that the sureties should repay the plaintiff under the specious reasoning that making him well again was a necessary step in the direction of enlarging his business? Or, suppose that he had grown shabby and needed new clothes. Everyone knows that a seedy life insurance agent labors under a serious handicap, yet we doubt if plaintiff would argue that a loan made to him for the purchase of new clothing would come within the undertaking of the sureties. All such things were necessary conditions to the proper performance by the agent of the duties of his employment, just as it was a necessary condition that he should breathe, take needed sleep and be able to talk. The advances to the agent under consideration were purely personal and were not for the purpose of enlarging the business within the meaning of that term obviously placed on it by the parties to the bond.

The judgment is reversed. All concur.